Probate Court of Franklin County.

IN RE TRUST UNDER THE SAMUEL B. HARTMAN WILL.

Decided May 20, 1930.

BOSTWICK, J.

Before entering upon a technical discussion of the authorities cited, it is thought proper to make a few general observations in connection with this case.

It is well to remember that we are dealing directly with a removal of a trustee and indirectly, in a measure, with the appointment of a successor trustee; that the law governing the removal and appointment of trustees differs materially from that which applies to executors, administrators and guardians. In each of such latter cases, the appointment is either governed by the will of the testator or is provided for by statute giving the next of kin or ward where of sufficient age, the right to the appointment

or right to choose the appointee. No such statutory authority obtains in the case of the appointment cf a substitute or successor trustee, where the will contains no designation, express or implied, of any one or more of the beneficiaries to choose such trustee.

While the law does not give those beneficially interested in the trust the right to select, or even the right of audience or conference in the matter, yet in this case the court was ready at all times to hear them, statements to the contrary notwithstanding, and even waited patiently for a period of over a week after the vacancy occurred, but no person beneficially interested in the trust appeared, until counsel finally came and made application for the appointment of a trustee satisfactory, as alleged, to a majority of the legatees interested.

Counsel for the applicants, in their supplemental brief, stated that the beneficiaries believed that they were unfairly treated.

The court recognizes the fact that disappointed litigants often attribute the cause of their disappointment to unfair treatment. We reflect, however, that during our thirteen years on the bench of this court, a period during which all counsel who appeared for these applicants many times have been engaged in cases pending before us, that never before, so far as we recall, has there been incorporated in a brief or pleading any statement or implication of unfairness on the part of this court. We do not claim to even approximate perfection nor seek immunity from criticism; but do assert that, judicially, our endeavors have always been exerted at least in the direction of fairness.

While considerable latitude was used in oral argument and some extraneous matters used in comment, and at times suggestions of thinly veiled threats appeared, the court has endeavored to avoid considering them or to be led into a discussion of that which cannot materially assist in the solution of these rather intricate problems.

The matter now before this court for decision arises on a certain written demand, filed by the beneficiaries of the

trust under the will of Dr. Samuel B. Hartman, deceased. Said application was filed on March 14, 1930, and is in the following language:

"Application of heirs for removal of Trustee.

"Now comes Sallie A. Hartman, Maribel Hartman Hughston, Maribel Hartman Finnell, Kathleen Hughston Cunningham and Virginia Hartman Hughston and represent to the court that they are substantially all and more than one-half in number and extent of interest of the heirs and next of kin of Samuel B. Hartman, deceased, and of the legatees named in his last will and testament, and that they are substantially all and more than one-half in number and interest of the persons having an interest in the trust established by the last will and testament of Samuel B. Hartman, deceased, now being administered in the Probate Court of Franklin county, Ohio, and of which estate the above court appointed the Ohio National Bank of Columbus as trustee to succeed Earl S. Davis, the trustee named in said will, who died on March 1, 1930, and the undersigned further represent that they are substantially all and more than one-half in number and interest of the persons having an interest in the aforesaid estate controlled by the Ohio National Bank, as such trustee.

"The undersigned, pursuant to the statute for such cases made and provided, hereby make this, their written application to the court, to remove the said the Ohio National Bank as such trustee, and the undersigned respectfully request and demand that it be removed forthwith."

Dr. Hartman died January 30, 1918, leaving a last will and testament, which was duly probated in this court. Under said will a rather elaborate trust was established for the purpose of controlling certain real estate, chattels, stocks, securities and other property comprising the greater portion of the estate of the testator in the aggregate sum or value of many thousands of dollars and possibly running for as long as fifty years. The testator directly nominated Mr. Earl S. Davis, of Columbus, as his executor and trustee. Mr. Davis qualified as executor February 7, 1918. He qualified as trustee January 11, 1919. On March 1, 1919, the executorship was closed and Mr. Davis continued as trustee until the time of his death.

Dr. Hartman, when he executed his will, looked forward to the time when Mr. Davis might die and when it would be necessary for a successor trustee to be appointed. In Item 1 of his will, the testator stated:

"I here appoint Earl S. Davis   *   *   *   my executor and trustee   *   *   *   to execute the trusts mentioned in and created by this will; and in case of his   *   *   *   death before the full execution of the trusts herein and hereby created, I hereby confer upon the person or persons who shall lawfully be appointed to act and shall duly qualify as my executor and trustee, all of the powers imposed upon said person or persons and all of the duties herein and hereby conferred and imposed upon said Earl S. Davis."

Earl S. Davis died on March 1, 1930, and, of course, a successor trustee became a necessity.

Because of the peculiar nature of the trust and the rather definite language used by the testator, the court had concluded that the successor should be an individual who could give his whole time to the management of the trust. The court was much influenced in this direction by the language used by the testator in the first codicil, that "my said executor and trustee shall devote all his time to his duties as such executor and trustee."

But the beneficiaries under this trust objected to the appointment of an individual as successor trustee, and insisted that a local bank or trust company would better protect the trust because of its freedom from death and also because of the fact that it would not be necessary to incur the expense of giving a bond. By two written instruments filed by their attorneys March 10, 1930, the beneficiaries requested the appointment of the City National Bank & Trust Company of Columbus as such trustee. Later the court was advised by the attorneys of the beneficiaries, that if the court desired, the City National Bank & Trust Company might be passed over and the appointment given to the Huntington National Bank, of this city.

Upon due consideration the court decided to appoint neither the City National Bank & Trust Company nor

the Huntington National Bank, and without any further direction or conference or approval by the beneficiaries, or their attorneys, appointed the Ohio National Bank of Columbus as such successor trustee. This bank had neither asked the appointment nor had it been recommended therefor. It had no knowledge of this prospective appointment until its officers were advised to come to the office of the Probate Court and qualify as such trustee. Thereupon, after the Ohio National Bank had fully qualified, the beneficiaries filed the written demand heretofore set out in full, that the court remove the Ohio National Bank as such trustee.

The beneficiaries in their demand assigned no cause whatever for this requested removal. The court does not understand that either the beneficiaries or their counsel question in any way the capacity and ability of the Ohio National Bank to administer this trust or any trust of this character. Indeed, it is conceded that the resources of said bank are ample and its experiences are wide.

The court feels that it was bound to make the appointment of the successor trustee within a reasonable time after the necessity arose as indicated in General Code, Section 10596, which provides:

"If a testamentary trustee dies, declines to accept, resigns, becomes incapacitated or is removed, and said will has not provided for the contingency of the death, incapacity or refusal of such trustee or trustees to accept or execute the trust, or such will names no Trustee, the court having probate of the will may appoint some suitable person or persons to execute the trust according to the will, who must give bond with securtiy as provided herein."

The demand for the removal of the Ohio National Bank is a naked and peremptory one, planted under Section 11035 and Section 11036 of the General Code.

Section 11035 provides as follows:

"The probate court may accept the resignation of any trustee accounting therein, or who has been appointed by it, and shall remove such trustee, he having ten days' notice thereof, for habitual drunkenness, neglect of his

duties, incompetency, fraudulent conduct, or because the interest of the trust requires it, or upon the written application of more than one-half of the heirs, or next of kin, or legatees having an interest in the estate controlled by such trustee. The trustee himself is not to be considered an heir, next of kin, or legatee under such proceedings."

Section 11036 provides:

"No trustee appointed under a will, shall be removed on the written application of more than one-half of the heirs, next of kin, or legatees, as provided in the next preceding Section, unless for good cause."

These two sections of the code are laws *pari materia* and, in a given case such as the one before us, they should be construed with reference to each other. It is apparent that the case presented turns upon the construction of these two sections of the code.

In connection with the construction of said Sections, we find two paramount propositions.

First: The meaning of the phrase "no trustee appointed under a will," and whether the trustee in the instant case is such in the meaning of the statute. Also, what significance, if any, has the word "legatees' as used in Section 11036.

Second: Whether Section 11035 is mandatory or whether it is so far directory as to permit the court to require proof of the existence of some cause before removal is effected.

Here we have a case in which the testator nominated a trustee and indicated at length and with great care the subject matter of the trust, provided for the possession and control of the same by said trustee, provided for the disposition to be made of the income arising therefrom, and such other matters as are material in the control and management of this large trust estate.

It is reasonable to suppose that the testator when he used the language heretofore quoted, namely: "I hereby confer upon the person or persons who shall lawfully be appointed to act * * * as my executor and trustee,

etc.," had reference to the appointment by the Probate Court of a trustee to take the place of said Earl S. Davis on his failure to qualify, or in case he qualified and thereafter ceased to be and act as such trustee. It will be presumed that the testator knew the law; and in the absence of any statement or implication to the contrary, that he had in mind its provisions applicable to this trust, both as to the creation of the trust and the appointment of a trustee to administer it as provided in General Code, Section 10596, heretofore quoted, which in a case such as this conferred upon the Probate Court the right and duty to appoint some suitable person or persons to execute the trust according to the will, or it may be said that Section 10596 designates the court which shall have the power of appointment of a successor provided for by the testator in no uncertain language in item first of his will. So it may be said that the law conferred upon this court the right to appoint and the testator by his language effectively has imposed upon this court the duty to appoint a successor trustee.

The court feels that it should not be divested of that right and has no disposition to claim exemption from that duty.

Counsel for the applicants, while admitting the existence of the court's right and duty to appoint, claim that a majority having a beneficial interest in the trust may at any time compel the removal of the court's appointee under Section 11035, unless the appointment comes within the provisions of Section 11036, which provides as aforesaid, that no trustee appointed under a will shall be removed by more than one-half of the heirs, next of kin or legatees unless for good cause. Counsel for the applicants go further in their study of Section 11036 and ask why the word "legatees" is used therein. They say, "If we hold that Section 11036 merely exempted the trustee who was designated by the testator or designated by some person appointed by the testator under his will, then the use of the word "legatees" becomes rational and has a place in the statute."

That may be true. It is also equally true that where a testator has used language that plainly implies that he means and intends that the judge of the court which has been designated by law to appoint a successor trustee, shall act in the capacity of the appointing power under the will, then the use of the word "legatees" becomes equally rational. It may be, however, that the Legislature in the use of the word "legatees" and the phrase "more than one-half of the heirs, etc.," were only following with the same language as used in the preceding section, not intending that the removal power conferred by Section 11035 should apply to any kind of testamentary trustees unless good cause be shown. In fact, that Section 11036 has the following meaning: No trustee appointed under a will shall be removed unless for good cause, and that the phrase "no trustee appointed under a will" applies to any trustee duly appointed and qualified to manage a trust created under a will. And this view has much plausibility, else why say "more than one-half," etc., may remove for good cause when in fact a removal for good cause could be effected by any one of the interested parties, when the interest of the trust requires it.

In connection with the phrase "appointed under a will" let us consider various classes of trustees. Counsel for the defendant bank have classified trustees as those which are under a will, and those which are wholly outside of a will. This is a splendid general classification. Counsel for the applicants, for the purposes of their discussion, have also found two classes of trustees, one is the trustee appointed under the will by the testator and the other is the class appointed by the Probate Court, and we may say here, with utmost impartiality, that, for the purposes of their discussion, this is a splendid classification.

The court, however, desires to make still another classification that applies, we think, in some measure specifically to the instant case.

There are three kinds of testamentary trustees.

1. Those expressly named or designated by the testator in his will.

2. Those referred to by the testator in his will in such plainly understandable language as amounts to the adoption by him, as his choice, of the person or persons appointed under his will by the lawful appointing power.

3. Those appointed by the proper appointing power when a will contains no choice or selection of such appointees made either expressly or by implication.

With this classification before us, let us ascertain, if possible, to which class the defendant bank belongs.

Obviously it does not belong in the first class, as it was not expressly named and designated by the testator in his will. As clearly and indisputably, some students will assert, and this is our view, it does not belong in the third class, since that class contains only such trustees concerning whom or about which the will contains no choice or selection made either expressly or by implication. If the reasoning is sound thus far, and the implications warranted, it follows as matter of course that the defendant bank belongs in our second class of testamentary trustees. Likewise, if this reasoning is correct, it means that the defendant trustee unquestionably is one appointed under a will, comes within the purview of Section 11036, is excepted from the operation of Section 11035, and cannot be removed unless for good cause, and this conclusion would be the same even if Section 11035 were ultimately found to be mandatory.

It is conceded that, if this be a case that requires the assignment and proof of a good cause, there can be no removal. Counsel for the beneficiaries claim that in this case the right of removal is absolute, and that upon the filing of the naked written demand without any assignment of good cause the court is bound to remove the duly appointed trustee. They argue that the phrase "no trustee appointed under a will" refers to a trustee appointed by a testator and not to a trustee appointed by the court. On the other hand, the attorneys for the trustee contend that even if Section 11035 means exactly what the beneficiaries claim, still the phrase "no trustee appointed under a will" applies to any trustee duly appointed and

qualified to manage a trust created under a will and especially in the instant case where the testator faced the possibility of the death of his first nominee and by the terms of his will expressly conferred "upon the person or persons who shall lawfully be appointed to act and who shall duly qualify as my executor and trustee, all of the powers imposed upon such person or persons and all of the duties herein and hereby conferred and imposed upon said Earl S. Davis."

These claims of a diametrically opposite character, made by able counsel after extended research, have impressed the court with the importance of the questions involved, the ultimate solution of which may possibly more or less revolutionize the practice in respect to the appointment and continuance in service of successor testamentary trustees. Judging from the earnestness disclosed by counsel on both sides of the case, it is assumed that the questions involved will finally be submitted to the judgment of the Supreme Court. This is as it should be. There should be as speedy a determination as is consistent with the magnitude of the questions involved. It may be necessary to ask the Legislature to again revise the statutes to the end that their meaning may be more clearly set forth. We are bound to deal with the statutes, however, in this case in their present form.

Section 10596 General Code gives to the Probate Court the right to appoint a successor to execute a trust under a will upon the death of the original trustee. Counsel for the beneficiaries in this case do not claim the appointment of the Ohio National Bank was illegal or that the court was without power to make the appointment. They argue that the court should not have exercised its power by the appointment of the defendant trustee. Indeed, the legality of the appointment cannot here be questioned. It is clear that if this were an illegal appointment, if the court was without right to make it, or if the court abused his discretion, then the appointment should have been attacked directly and a higher court called upon to reverse this court. No such proceeding to review having been

raised, it must be assumed that the appointment of the defendant bank is lawful. *Wilberding, Admr.,* v. *Miller et al.,* 90 O. S., 28.

Counsel for the beneficiaries wish to avoid what they term an uncontrolled discretion in the matter of the appointment of a successor trustee. That does not appear to be the main question involved, since counsel concede that the power of appointment cannot be directed or controlled by the beneficiaries except in that they claim the right to force repeated removals until an appointment satisfactory to them is made. Counsel for the trustee deny that the beneficiaries without any assignment of cause, have the uncontrolled right to force removal after removal and thereby control the appointment. Surely it is a fair observation that an empty right has been given to the Probate Court if, after the making of an appointment in the exercise of his discretion, under Section 10596, the beneficiaries can without cause, force removal after removal. Any sane person can see that this would be giving to the beneficiaries the real practical power of appointment. And that situation was well illustrated in the instant case.

In the beginning when the court believed that under the peculiar provisions of Dr. Hartman's will, the successor trustee should be an individual rather than a corporation, the attorney for the beneficiaries conferred with the Probate Court and with his chief clerk and frankly pointed out that if the court refused to appoint a trustee satisfactory to the beneficiaries, they would proceed under Section 11035, General Code, and compel the removal of the one appointed, and that they obviously might continue compelling one removal after another until they secured the appointment of the trustee they desired.

Counsel for the beneficiaries believe that the beneficiaries rather than the Probate Judge should control in the appointment of a trustee in this case. The court believes that their argument is based upon a false assumption of ownership and upon a failure to properly recognize the purposes, functions and duties of the Probate Court.

As a matter of fact, a trust such as Dr. Hartman created, is made for the express purpose of withholding property from the control of the beneficiaries, many of whom may be yet unborn, and to preserve it for beneficiaries who might otherwise wholly consume or wholly lose it. It is assumed in theory, at least, however badly it may seem to work out in actual practice, and regardless of personal feeling in the matter, that the Probate Court and Probate Judge are the conservators of a trust, the protectors of the trust, the repository of the *testator's intentions, as manifested in his will.* *Stevenson* v. *Evans et al.,* 10 O. S., 307; *Brasher et al.* v. *Marsh et al.,* 15 O. S., 103.

As counsel for the trustee have pointed out at some considerable length in their brief, a testator when making a will and creating a trust has it in his power to make any kind of provisions which will admit his beneficiaries or any of them into either a large or a limited control either of the trust itself or of the appointment of a trustee thereunder. When that has not been done and when, as in the instant case, a will especially recognizes the appointment of a successor trustee by the court and all the original trustee's powers and duties are conferred by the testator on that successor trustee, it may be well assumed that the testator did not intend that the beneficiaries, either directly or indirectly, should seize the control and management of the property which he designedly had kept away from them.

This point of view is aptly expressed in the Pennsylvania case, cited by counsel for the trustee. It was a case brought under an act providing: "That where any trustee now exists or is hereafter created, the *cestui que trusts,* or a majority of them having a life estate, shall have the right to elect or choose trustees to execute said trust; and upon petition of the *cestui que trusts* or parties in interest, as aforesaid, having such life estate, the Court of Common Pleas or Orphans Court in and for the city of Philadelphia, having jurisdiction, shall remove the acting trustee or trustees, and appoint other or others, as chosen or elected by said parties."

Here is an act of legislation more far reaching in its conference of power than Section 11035 General Code of Ohio. The latter act confers power of removal only, while the former confers removal and appointing power.

Under the Pennsylvania statute, Howard A. Stevenson and Rosalia C. Stevenson, husband and wife, filed a petition to have Alexander Allen and William Underdown, trustees under a deed of trust made by Mrs. Stevenson prior to her marriage with Stevenson, removed, and asking that a Life Insurance & Trust Company be appointed in their place. The court dismissed the petition. The opinion by Judge Ludlow of the Common Pleas Court contains the following pertinent language:

"This petition has been filed under the act of Assembly, approved April 9, 1868, which provides a method by which a *cestui que trust,* may in Philadelphia county, choose new trustees. Two constructions may be put upon this law; one would oblige us at the mere whim of a *cestui que trust* at any time, to appoint a new trustee of his selection; and the other, to make such an appointment when for any just cause, the former trustee has been removed, dies or resigns.

"Surely we cannot adopt the first construction, because it could never have been the intention of the Legislature to endanger or destroy trusts altogether. That such a result would follow in practice from such a construction is clear, for the new trustee would be placed under the control of the *cestui que trust.* If the power of right exists, it may of right be exercised at any moment. The trustee appointed today, no matter how unexceptionable he may be, can be removed tomorrow on the mere petition of the *cestui que trust,* and so on from day to day, and week to week, and year to year.

"The moment a trustee, although exercising a just restraint, does a thing which his *cestui que trust* does not approve, he may—yes, if we adopt the argument of the petitioners' counsel—must be removed.

"Who is to be the master of the situation? What is to become of the trust estate? The person to be protected, under the supervision of the court, exercises a fatal control over the agent appointed to protect him and even commands the court. One trustee must follow another, it may be in such rapid succession that the investments of a trust estate will hardly be known to one before his successor will be appointed; account after account

must be filed, thus opening the door to prejudicial litigation, with its inevitable cost. It is our duty to rescue this act of Assembly from a construction which will produce such chaos as this. Fortunately, we can do so by holding the act to be so far directory as to permit us to judge of the existence of some cause of removal. When such cause does in fact exist, and the *cestui que trust* may nominate, if we approve of his nominee, we will appoint him. In the argument, the counsel for the petitioner admitted that we were not bound to appoint an improper person as a trustee, even upon the nomination of the *cestui que trust;* by analogy we think it just as reasonable not to remove a trustee without cause, and for the reasons we have already stated.

"We do not now discuss the question of the constitutionality of the act. Give to it our construction, and it is clearly constitutional. We only add, that should the petitioners' construction be the true one, then it is very questionable how far any act of Assembly, if not in form, in fact destroys every substantial characteristic of a trust, can be consistent with our Constitution.

"As this petition presents no reason why the present trustee should be removed, we decline to grant its prayer."

The above opinion of the Common Pleas Court was adopted by the Supreme Court and the decree affirmed. *Stevenson's Appeal,* 68 Penn. State Reports, 101.

The two Sections 11035 and 11036, General Code of Ohio, were originally one Section, 6334 of the Revised Statutes. It appears that these special provisions relative to removal were amended into the statute in 1903, 90th Ohio Laws, 368. In the same year, at the same session of the Legislature, there was a revision of the appointing section, now known as Section 10596 of the General Code.

The court gives weight to the suggestion that if it had been the purpose of the removal amendment to effect what the beneficiaries claim, the Legislature would have revised the appointing section so as to conform at least in some degree to the removal sections. It is thought that the same Legislature at the same session, would not have submitted the revised appointing section, keeping the power of appointment in the hands of the Probate Court, if it had been meant by the revision of the removal sec-

tion to give beneficiaries absolute removal power. It is not thought that the Legislature thus would have done indirectly what counsel for the beneficiaries claim, when it could so easily have been done directly.

No adjudication has been submitted to the court interpreting the phrase "trustee appointed under a will," as used in Section 11036. It seems significant that none has been found. Apparently in no Probate Court in this state have the beneficiaries been demanding the exercise of the absolute privilege of removal without the assignment of any cause. Therefore, in the absence of more definite information and in the absence of adjudications, the court is justified in accepting a more liberal construction than the one claimed by the beneficiaries.

What has been the general use of the phrase "appointed under a will," when applied to trustees? Counsel for the beneficiaries point to some cases where the phrase has been used as applicable to the original trustee named by the testator, and they claim that the phrase applies only to the trustee named by the testator in his will or named by some person designated by the testator to designate the trustee.

They claim that the Probate Court had no jurisdiction to make any appointment of Earl S. Davis as trustee in this case. They admit, however, that "it is true that the practice has grown up in Probate Courts of having an application made for the appointment of the trustee already appointed by the testator." In this connection they cite the case of *Seasongood* v. *Seasongood*, 23 O. C. C. (N. S.), 369, where it is held that a non-resident who has been named in a will as co-executor and co-trustee should be recognized by the Probate Court by accepting a proper and sufficient bond and issuing to him in conjunction with his co-executors and co-trustees letters testamentary on his father's will.

At page 377, Judge Gorman said:

"The Probate Court's jurisdiction over all testamentary trustees is regulatory only."

If the Probate Court has regulatory jurisdiction of all

testamentary trustees, we see no violence done if the Probate Court of Hamilton county, in complying with the mandate, issued letters of co-trusteeship as well as letters testamentary.

The practice of appointing testamentary trustees upon their formal application and the issuing of letters of trusteeship seems to be the approved practice in such cases.

"The statutes say nothing about applications for trusteeship. But the better proceedure is to require a formal application properly verified stating the facts. This as well as the bond and letters are readily prepared from the other testamentary forms." Diebel's Ohio Probate Code, page 997.

Indeed this practice has become so generally well recognized, that the legal departments of many corporate companies require authenticated copies of letters of trusteeship when dealing with testamentary trustees in cases where the corporate stock of their companies is involved.

Counsel for the beneficiaries cite the case of *Pike* v. *White,* 22 O. C. C. (N. S.), 61, holding that the Probate Court has no jurisdiction to supervise a testamentary trust. This case is not decisive of any of the problems in the instant case, and we do not feel that it is a controlling case, especially in the light of the *Fidelity & Deposit Co.* v. *Wolfe et al.,* 100 O. S., 332, where in the opinion Judge Wannemaker said:

"Manifestly the first question before this court is one relating to the jurisdiction of the Probate Court under the Constitution and laws of Ohio, touching trust estates.

"Section 8, Article 4 of the Constitution of Ohio reads: 'The Probate Court shall have jurisdiction in probate and testamentary matters, the appointment of administrators and guardians, the settlement of accounts of executors, administrators, and guardians, and such jurisdiction in habeas corpus, the issuing of marriage licenses and for the sale of land by executors, administrators, and guardians, and such other jurisdiction, in any county or counties, as may be provided by law.'

"It is admitted that the subject matter in question relates to testamentary matters. It must likewise be admitted that this jurisdiction is conferred on Probate Courts directly and expressly by the Constitution.

"Section 7 of the same Article of the Constitution further provides: 'There shall be established in each county a Probate Court which shall be a court of record, etc.'

"The words 'testamentary matters' are without limitation. They are as broad and comprehensive as is possible in all trust estates created by will."

Rockell's Complete Ohio Probate Practice, 4th Edition, Section 20, contains the following statement:

"It may therefore be said that when a power is conferred upon the Probate Court by statute, unlimited in its method of execution, that the Probate Court has full power to hear and adjudicate all matters relating thereto and pass upon them, notwithstanding the fact that in doing so it may exercise the powers of a court of chancery or one of common law or only such power as is strictly confined to probate jurisdiction."

General Code, Section 11214, under the head-note "Investment of Funds" reads in part as follows:

"When they have funds belonging to the trust which are to be invested, executors, administrators, guardians, including guardians of the estate of minors, and trustees, may invest them in bonds   *   *   *   or in such other securities as the court having control of the administration of the trust approves."

A study of the authorities cited by counsel for the beneficiaries fails to convince this court that the general use of the phrase "appointed under a will" has the limited significance they have attached to it.

Counsel for the trustee make the counter observation and submit authorities to the effect that there are also cases where a trustee is spoken of as appointed under a will although he was appointed by the court as a successor to the trustee originally designated by the testator.

Counsel claim that they have as good a right to assert that the phrase "under a will" applies only to successor trustees as the beneficiaries have to claim that said phrase applies only to the testator's selection.

We hold, however, that this phrase "appointed under a will" may apply to all classes of testamentary trustees, and certainly does apply to the successor trustee appointed by the court in the instant case.

We believe that courts and lawyers in practice and proceedure connected with wills, trusts and trustees, usually speak of testamentary trustees as having been "appointed under a will" without differentiating between those selected by a testator and those selected by the court.

In the case of *State Savings Bank & Trust Company* v. *John G. Reinhard et al.*, 13 O. D., page 630, Judge Thomas M. Bigger, able jurist, lately on the Common Pleas Bench of this county, in his decision quoting from the petition filed by Col. Thomas E. Powell, attorney for the plaintiff, used the following language:

"It is averred that after the death of Frank J. Reinhard, the surviving trustees, Jacob, John and Henry Reinhard, resigned as such trustees, and that their resignations were accepted by the Probate Court, and that on September 11, 1901, the plaintiff herein was appointed by the Probate Court as testamentary trustee under the will, and that such trust was accepted by the plaintiff and that it qualified as such trustee and is still acting in that capacity."

As pointed out by counsel for the trustee, Section 10600, General Code, which pertains to the appointment of a trustee to carry into effect a trust created by a foreign will, carries as a headnote, "The Probate Court may appoint a trustee under a foreign will." They further point out that General Code Section 10600 had a counterpart in Volume 2 of Swan & Critchfield's Revised Statutes, page 1631, where marginal designation is as follows: "Common Pleas may appoint a trustee under a foreign will."

The court, in his conception of his functions, does not believe that the Legislature intended to give the absolute power of removal to the beneficiaries in respect to a trustee appointed by the court to administer a trust created under a will, and especially where the intention of the testator is clearly manifested, as appears by the will in the instant case. The court is impressed with the logic and weight of authority submitted by counsel for the trustee to the effect that the phrase "under a will" would embrace both a trustee appointed by the testator and a successor trustee appointed by the court. That this con-

struction, though not absolutely necessary in the instant case, is essential to avert the inevitable evil that will follow if unlimited power of removal of successor trustees is given the beneficiaries. If Section 11035 is ultimately found to be so far directory as to permit the court to require proof of reasonable cause before removal, which construction this court favors, then the whole subject immediately becomes clarified and the danger of the destruction of trusts by repeated removals as suggested as a possible outgrowth, is obviated. Until otherwise more clearly advised or until the higher courts have finally fixed the meaning of the statutes under consideration, this court is constrained to adhere to what he believes to be the ordinarily and generally accepted meaning of the laws in connection with the appointment and removal of trustees.

The court is of the opinion that the appointment of the Ohio National Bank as trustee in this case was a valid, legal and just exercise of his appointing power, and that it will be conducive to the successful administration of said trust estate.

The application of the beneficiaries demanding the removal of the Ohio National Bank as trustee, without assigning any cause, is therefore denied.

An entry may be prepared accordingly, with such exceptions as counsel desire.